**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **SEBASTIAN E. LENTINI, et. al.,** *Plaintiffs*, v. **MCDONALD'S USA, et. al.,** *Defendants*. | Civil Action No. 19-4596 **OPINION** |

**ARLEO, UNITED STATES DISTRICT JUDGE**

**THIS MATTER** comes before the Court by way of Defendants McDonald's USA LLC's ("McDonald's"), Ingrid Rodriguez's, Mwafak Kanjee's, and Matthew Ahayi's (collectively, the "Individual Defendants" and together with McDonald's, "Defendants") Motion to Dismiss, ECF No. 4, Plaintiffs'[1] Amended Complaint. For the reasons set forth below, the Motion is granted in part and denied in part.

**I. BACKGROUND**

This action arises from a dispute between McDonald's and one its New Jersey franchisees concerning the cost of upgrades to the franchisee's stores. Lentini, through the corporate Plaintiffs, owns and operates six McDonald's franchises in New Jersey. Am. Compl. ¶¶ 2-8, ECF No. 2.1. Lentini is 81 years old, and alleges that McDonald's, as "part of a broader policy aimed at pushing out older, long-term franchisees," is "unlawfully attempting to force Lentini out of the McDonald's system" by undermining his franchise network and weakening customer goodwill in his area of

---

[1] Plaintiffs are Sebastian Lentini ("Lentini") and QSC Enterprises, Inc., QSC II, Inc., QSC III, Inc., QSC IV, Inc., TLC Enterprises, Inc., and M&A Enterprises, Inc. Am. Compl. ¶¶ 2-8, ECF No. 2.1.

operation.  Id. ¶¶ 2, 17.  He alleges that McDonald's has attempted to oust him by having the Individual Defendants suggest that he retire, preventing him from expanding to other McDonald's locations, opening new McDonald's locations near his existing franchises, and has imposed excessive rebuilding and modernization costs on him, in violation of the terms of his Franchise Agreement.  Id. ¶¶ 18-19, 21-28, 29-38, 40-78.

On September 18, 2017, Plaintiffs filed this action in the Superior Court of New Jersey, Hudson County, alleging violations of the New Jersey Law Against Discrimination, ("NJLAD"), N.J.S.A. § 10:5-1 et seq., the New Jersey Franchise Practices Act, ("NJFPA"), N.J.S.A. § 56:10 et seq., and breach of the covenant of good faith and fair dealing. On March 16, 2018, at oral argument on a pending motion to dismiss, the state court dismissed the NJFPA and breach of implied covenant claims against the Individual Defendants and otherwise denied the motion, permitting the aiding and abetting claims against the Individual Defendants under the NJLAD in Count I to proceed.  The state court subsequently entered an order on the motion. ECF No. 12.2.

Plaintiffs thereafter filed an Amended Complaint in the Superior Court, incorporating the court's dismissal of the above counts and adding Counts IV-VII.  Plaintiffs' Amended Complaint asserts seven counts:  (1) violation of the NJLAD against all Defendants (Count I); (2) violation of the NJFPA against McDonald's only (Count II); (3) breach of the implied covenant of good faith and fair dealing against McDonald's only (Count III); (4) breach of contract against McDonald's only (Count IV); (5) a violation of the federal Racketeering Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c) (Count V); (6) New Jersey's State RICO Act, N.J.S.A. § 2C:41-2(c) (Count VI); and (7) one count of common law civil conspiracy (Count VII).  On February 4, 2019, Defendants removed this case to this Court. See ECF No. 2.   Defendants brought the current Motion to Dismiss on February 25, 2019.

## II. LEGAL STANDARD

Rule 12(b)(6) allows for dismissal where the non-moving party fails to state a claim upon which relief can be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." Id. (internal quotation marks omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—that the pleader is entitled to relief." Id. at 679. It is well settled that the Court may consider "document[s] integral or explicitly relied upon in the complaint" at the motion to dismiss stage "without converting the motion into one for summary judgment." In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997) (quoting Shaw v. Digital Equip. Corp., 82 F.3d 1194, 1220 (1st Cir. 1996)). .

## III. DISCUSSION

### A. The Superior Court's Order (Counts I-III)

In their Motion to Dismiss, Defendants seek dismissal of Counts I through III on the same grounds that they raised at the state court before removal. Plaintiffs argue that this Court should not revisit the state court's rulings on the motion to dismiss before the case was removed; Defendants argue that it should because it involves "different standards." The Court agrees with Plaintiffs.

By statute, after an action "is removed from a state court to a district court of the United States, . . . [a]ll injunctions, orders, and other proceedings had in such action prior to its removal shall remain in full force and effect until dissolved or modified by the district court." 28 U.S.C. § 1450. Thus, after removal, "interlocutory state court orders are transformed by operation of 28 U.S.C. § 1450 into orders of the federal district court" which is then "free to treat the order as it would any such interlocutory order it might itself have entered." In re Diet Drugs, 282 F.3d 220, 232 (3d Cir. 2002); In re Farah, 126 F. App'x 66, 70 (3d Cir. 2005).

"A Court may reconsider its own interlocutory orders on motion or sua sponte. Therefore . . . this Court is not barred from revisiting the [a]rguments advanced by the [Defendants], or from entering an order contrary to that entered by the state trial court." Long Branch Citizens Against Hous. Discrimination, Inc. v. City of Long Branch, No. 09-4980, 2010 WL 3271733, at *4 (D.N.J. Aug. 17, 2010). Thus, the proper mechanism is not to file a duplicative motion to dismiss, but a motion for reconsideration. See Hautz Const., LLC v. H & M Dep't Store, No. 12-347, 2012 WL 5880370, at *4 (D.N.J. Nov. 20, 2012) (concluding "that reconsideration is appropriate" upon federalization of a state court order); Long Branch Citizens, 2010 WL 3271733, at *4 (discussing federalization of state court orders and stating that "[a] Court may reconsider its own interlocutory orders on motion or sua sponte").

Defendants have not submitted a motion for reconsideration, and nothing in the record suggests any deficiency at the state court level to prompt a sua sponte reconsideration by this Court. Defendants did not seek reconsideration and do not cite any mistakes of law or fact made by the Superior Court. The motion to dismiss Counts I-III is therefore denied.

B.  **Breach of Contract (Count IV)**

Defendants seek to dismiss Plaintiffs' claim of breach of contract (Count IV).[2] The Court must first determine which law to apply.

The Court will "turn to New Jersey choice-of-law rules to determine what state's substantive contract law governs the interpretation of the Agreements' forum selection clauses." Collins on behalf of herself v. Mary Kay, Inc., 874 F.3d 176, 183 (3d Cir. 2017). Under these rules,"[o]rdinarily, when parties to a contract have agreed to be governed by the laws of a particular state," the courts "will uphold the contractual choice." Id. at 183-184.

Here, the Franchise Agreement contains a "Governing Laws" provision that elects Illinois law. ECF No. 4.2 at Ex. A, § 27. New Jersey's courts will respect this provision unless "(a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue." Instructional Sys., Inc. v. Computer Curriculum Corp., 130 N.J. 324, 342 (1992). The New Jersey Supreme Court has made clear that the state "has a strong policy in favor of protecting its franchisees." Id. at 345; see also id. at 344 (disregarding a California choice-of-law provision in a franchise agreement because most courts "have held that the parties to a franchise agreement cannot avoid the franchise law of the state in which the franchisee is located by providing in their agreement that the laws of another state will govern") (internal quotation marks omitted). See also Sokoloff v. Gen. Nutrition Companies,

---

[2] Plaintiffs attached the Franchise Agreement to their Complaint. Because a "court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document," the Court will consider it on the present motion to dismiss. Pension Ben. Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).

5

Inc., No. 00-641, 2001 WL 536072, at *6 (D.N.J. May 21, 2001) (applying New Jersey law despite Pennsylvania choice-of-law provision "because plaintiffs reside in New Jersey, the franchise business is located in New Jersey, and the alleged violation occurred in New Jersey"). The Court will therefore apply New Jersey law here.

"To prevail on a breach of contract claim, a party must prove a valid contract between the parties, the opposing party's failure to perform a defined obligation under the contract, and the breach caused the claimant to sustain[] damages." EnviroFinance Grp., LLC v. Envt'l Barrier Co., LLC 440 N.J. Super. 325, 345 (App. Div. 2015). See Pearlmont, LLC v. Waterfall, Inc., No. A-5057-09T1, 2011 WL 2652154, at *3–4 (N.J. Super. Ct. App. Div. July 8, 2011). See also Kearny PBA Local # 21 v. Town of Kearny, 81 N.J. 208, 221 (1979) ("The polestar of construction of a contract is to discover the intention of the parties"). "If a contract is unambiguous, it must generally be enforced as written. A contract is ambiguous if it is reasonably susceptible of two interpretations. The issue of ambiguity is one of law. As [has been] held…the 'surrounding circumstances and the underlying purpose of the contract' must be considered along with the 'express terms' in ascertaining the 'intent of the parties.'" Pearlmont, 2011 WL 2652154, at *3–4 (citations omitted).

Under the Franchise Agreement, Lentini and the corporate plaintiffs agreed to keep each "[r]estaurant constructed and equipped in accordance with the building blueprints and equipment layout plans that are standard in the McDonald's system or as such blueprints and plans may be reasonably changed from time to time by McDonald's." See Am. Compl. ¶ 93; see also id. at Exs. A-B. Plaintiffs allege that McDonald's breached the Franchise Agreement by imposing rebuilding demands that "are entirely unnecessary and unreasonable" and "will be fatal to Lentini's business." Am. Compl. ¶¶ 94-95. Defendants argue that Plaintiff has failed to state a claim for breach of

contract as to his Bayonne, New Jersey location because Lentini specifically agreed to rebuild that location in a "New Term Rider." Def.'s Mem. at 30-31, ECF No. 4.1. The Court disagrees.

The Franchise Agreement, as modified by the New Term Rider, is ambiguous as to what qualifies as a "reasonable" change to the McDonald's System blueprints and plans. The New Term Rider between McDonald's and Lentini states in relevant part:

> 1. McDonald's is analyzing the possibility of rebuilding the Restaurant. By July 30, 2018, McDonald's, at its sole discretion, may notify Franchisee that Franchisee must rebuild the Restaurant. McDonald's will establish the terms of the rebuild offer in accordance with McDonald's rebuild policy then in effect ("Rebuild Offer"). Failure of Franchisee to accept the Rebuild Offer within 30 days from the date of the Rebuild Offer will be a material breach of this Franchise, entitling McDonald's to all rights and remedies under this Franchise including, but not limited to, the right to terminate this Franchise. If Franchisee declines to rebuild the Restaurant, Franchisee will have the opportunity to sell this Franchise up to 180 days from the date of the Rebuild Offer. The sale must be to a buyer approved by McDonald's who agrees to accept the Rebuild Offer. In no event will Franchisee be able to prevent or delay the rebuild of the Restaurant.

Here, the New Term Rider's use of the term "sole discretion" must be informed by Section 12(c) of the Franchise Agreement, because the New Term Rider is "incorporated into th[e] Franchise Agreement." Section 12(c) demands that the franchisee:

> (c) Keep the Restaurant constructed and equipped in accordance with the building blueprints and equipment layout plans that are standard in the McDonald's System or as such blueprints and plans may be reasonably changed from time to time by McDonald's;

Thus, McDonald's may require that Plaintiffs comply with new blueprints and plans so long as those plans were "reasonably changed." However, the effect of the New Term Rider is ambiguous here: it can be read as a consent to rebuild the Bayonne location, or it could be read as conditioning that consent on the understanding that any decision by McDonald's would be binding on Lentini so long as the rebuild was reasonable. Plaintiffs here assert a breach of contract claim that specifically challenges the reasonableness of the plan, claiming that McDonald's has "presented Lentini with a non-viable and completely unreasonable rebuild policy." Am. Compl. ¶ 47. Because

the New Term Rider's use of the term "sole discretion" does not modify McDonald's obligation to propose reasonable changes, and because Plaintiffs have adequately pled the unreasonableness of the changes, the breach of contract claim cannot be dismissed at this stage of the proceedings.

Defendants also argue that the breach of contract claim should be dismissed because Plaintiffs have not alleged injury, as McDonald's has simply made demands for renovations without taking further action. There must be "a causal relationship between a breach [of contract] and damages" to sustain a claim. See Schmidt v. Wells Fargo Bank, N.A., No. 17-1708, 2017 WL 4074025, at *3 (D.N.J. Sept. 14, 2017). But Plaintiffs adequately allege that they "pay[] monthly fees to McDonald's for regional support," and that these fees are being "marked up" by outside vendors connected to the rebuild. Am. Compl. ¶ 64; see also id. ¶¶ 63-78. According to Plaintiffs, if McDonald's did not make the proposed changes to the Bayonne location, then they would not currently be charged such "exorbitant fees." Id. ¶ 78. Neither the Amended Complaint nor the moving papers make clear if the exorbitant fees being charged are actually being paid by Plaintiffs, but since the Court must "draw all reasonable inferences in favor of the non-moving party," Stokes v. Se. Pennsylvania Transportation Auth., 657 F. App'x 79, 81 n.3 (3d Cir. 2016), it will assume as much. Plaintiffs have adequately pled a causal relationship between the breach and damages. The Motion to Dismiss Count IV of the complaint is denied.

  **C.**  **Civil RICO (Counts V-VI)**

Plaintiffs assert state and federal civil RICO claims against McDonald's, alleging that it "effected a scheme to defraud Lentini and other franchisees" by "deliberately and knowingly overcharging franchisees . . . or deliberately and knowingly causing the plaintiffs to be overcharged (on purchases made from an approved vendor required to pay kickbacks to McDonald's as a condition of becoming approved.)". Am. Compl. at ¶ 105. Defendants argue that this claim must

8

be dismissed, because Plaintiffs have failed to adequately plead the elements of a civil RICO claim. The Court agrees.

To state a federal RICO claim, a plaintiff must allege: "(1) the conducting of, (2) an enterprise, (3) through a pattern, (4) of racketeering activity." Shulman v. Facebook.com, No. 17-764, 2018 WL 3344236, at *8 (D.N.J. July 9, 2018) (quoting Gunter v. Ridgewood Energy Corp., 32 F. Supp. 2d 166, 173 (D.N.J. 1998)). To establish a "pattern of racketeering," a plaintiff must allege "at least two predicate acts of racketeering that occurred within ten years of each other." Slimm v. Bank of Am. Corp., No. 12-5846, 2013 WL 1867035, at *20 (D.N.J. May 2, 2013). "New Jersey's civil RICO statute is substantially similar" to the federal civil RICO statute.[3] Sharp v. Kean Univ., 153 F. Supp. 3d 669, 674 (D.N.J. 2015). See also Galicki v. New Jersey, No. 14–169, 2015 WL 3970297, at *7 (D.N.J. June 29, 2015) (discussing standards under state act).

Here, Plaintiffs have failed to adequately plead the existence of an enterprise. Plaintiffs attempt to plead the existence of an "association in fact" separate and distinct from McDonald's itself, consisting of McDonald's and its "affiliates and/or subsidiaries that sell products, services and materials to franchisees, and all of McDonald's franchisees worldwide." Am. Compl. ¶ 99. To plead the existence of an association in fact, "a RICO claim must plead facts plausibly implying the existence of an enterprise with the structural attributes identified in [Boyle v. United Sates, 556 U.S. 938 (2009)]: a shared 'purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose.'" In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 369–70 (3d Cir. 2010) (quoting Boyle, 556 U.S. at 946).

---

[3] To state a claim under New Jersey's civil RICO statute, a plaintiff must allege "'(1) the existence of an enterprise; (2) that the enterprise engaged in activities that affected trade or commerce; (3) that the defendant was employed by or associated with the enterprise; (4) that the defendant participated in the conduct of the affairs of the enterprise; (5) that the defendant participated though a pattern of racketeering activity; and (6) that the plaintiff was injured as a result of the conspiracy." Sharp, 153 F. Supp. 3d at 674 (quoting N.J.S.A. § 2C:41–2(c))

9

First, Plaintiffs' allegations fail to establish any common "purpose" of the enterprise. In their pleadings, Plaintiffs allege that the enterprise's purpose is to "fraudulently and deceptively obtain from Plaintiffs excessive amounts of money for McDonalds'-mandated rebuilds and/or renovations to their franchised restaurants in New Jersey." RICO Stmt. ¶ 1, ECF No. 19. But Plaintiffs fail to plead any facts supporting this vague statement. There is no allegation that any member of the alleged enterprise made a fraudulent misrepresentation, deceived Plaintiffs (or anyone else), or explanation as to what Plaintiffs mean by "excessive" amounts of money. Without some plausible factual allegations, the Amended Complaint fails to plead a common purpose to the alleged enterprise, and Plaintiff cannot state a RICO claim.

Second, Plaintiffs have failed to allege any facts suggesting a relationship between non-McDonald's entities. While the Amended Complaint alleges that McDonald's controls a number of affiliated entities in the alleged scheme, Am. Compl. ¶¶ 99, 102-03, there are no allegations that the controlled entities coordinated with each other in any way. "Courts often address the 'enterprise' question in light of the metaphor of a wheel composed of a hub, spokes and a rim," and require plaintiffs to allege connections not only between the hub and spokes, but also a 'rim,' that is, connections between the spokes. Valcom, Inc. v. Vellardita, No. 13-3025, 2014 WL 1628431, at *6 (D.N.J. Apr. 23, 2014), on reconsideration in part, 2014 WL 2965708 (D.N.J. July 1, 2014). Here, Plaintiff has alleged a "'rimless wheel conspiracy': 'one in which various defendants enter into separate agreements with a common defendant, but where the defendants have no connection with one another, other than the common defendant's involvement in each transaction.'" Id. (quoting In re Ins. Brokerage, 618 F.3d at 327). Without some allegation as to how these entities are connected, Plaintiffs cannot allege the existence of an association in fact enterprise.

Third, Plaintiffs fail to plausibly allege a pattern of racketeering activity. As noted above, a "'pattern of racketeering activity' requires at least two acts of racketeering activity within a ten-year period." Aguilar v. Ken's Marine & Oil Serv., Inc., No. 14-6735, 2017 WL 2312358, at *3 (D.N.J. May 25, 2017) (quoting 18 U.S.C. § 1961(5)). "Racketeering activity" includes a number of offenses listed in 18 U.S.C. § 1961(1), including mail fraud in violation of 18 U.S.C. § 1341 and wire fraud in violation of 18 U.S.C. § 1343. Where, as here, Plaintiffs "allege mail and wire fraud as the basis of a RICO violation, the allegations of fraud must comport with the Fed. R. Civ. P. 9(b) heightened pleading standard." Lum v. Bank of Am., No. 00-223, 2001 WL 34059378, at *4 (D.N.J. Nov. 29, 2001), aff'd, 361 F.3d 217 (3d Cir. 2004).

Here, Plaintiffs fail to allege a single instance of mail or wire fraud, as they fail to allege any facts suggesting a fraudulent scheme. As noted above, Plaintiffs' only allegations suggesting fraud are their vague and conclusory claims that they were "knowingly overcharged" or that they purchased services or equipment at prices "known to be higher than their fair market value." Am. Compl. ¶¶ 103-05. Without more detailed factual allegations indicating how or why those charges were fraudulent, or how those purportedly fraudulent schemes work, Plaintiff cannot establish a pattern of racketeering activity.

As both the federal and state RICO statutes require a pattern of racketeering activity, Counts V and VI of the Amended Complaint are dismissed, without prejudice.

### D. Conspiracy (Count VII)

Plaintiffs allege that McDonald's, as part of "a conspiratorial scheme to defraud Lentini," is liable pursuant to New Jersey civil conspiracy. Am. Compl. at ¶¶ 120-22. In New Jersey, a civil conspiracy is "a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement

between the parties to inflict a wrong against or injury upon another, and an overt act that results in damage." Banco Popular N. Am. v. Gandi, 184 N.J. 161, 177 (2005) (internal quotation marks omitted). "There are four elements to the tort of civil conspiracy: (1) a combination of two or more persons; (2) a real agreement or confederation with a common design; (3) the existence of an unlawful purpose, or of a lawful purpose to be achieved by unlawful means; and (4) proof of special damages." Morganroth & Morganroth v. Norris, McLaughlin & Marcus, P.C., 331 F.3d 406, 414 (3d Cir. 2003).

Here, Plaintiffs have failed to state a claim for a civil conspiracy. They have not plausibly alleged facts suggesting an unlawful purpose to the conspiracy, or any special damages. See Karachi Bakery India v. Deccan Foods LLC, No. 14-5600, 2017 WL 4922013, at *11 (D.N.J. Oct. 31, 2017) (collecting cases). Count VII is therefore dismissed, without prejudice.

### IV. CONCLUSION

Defendants' motion to dismiss, ECF No. 4, is hereby **GRANTED IN PART**, and **DENIED IN PART**. An appropriate order follows.

*/s Madeline Cox Arleo*
**Hon. Madeline Cox Arleo**
**United States District Judge**